BAKER, Judge
(dissenting):

Introduction

Today the Court reverses more than fifty years of military justice precedent and practice based on Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), a Supreme Court case addressing the time for appeals under the federal habeas statute, 28 U.S.C. § 2107 (2000). In Bowles, the Court concluded that “the taking of an appeal within the prescribed time is ‘mandatory and jurisdictional’ ” and that 28 U.S.C. § 2107(c) prescribed such a time limit based on the text of the statute. 127 S.Ct. at 2363 (citation omitted). However, in applying Bowles to this Court’s jurisdiction, the majority ignores three critical distinctions.
First, the Bowles Court was addressing a federal civil statute, 28 U.S.C. § 2107, not the Uniform Code of Military Justice (UCMJ).
Second, Congress did not legislate or intend to prescribe this Court’s jurisdiction in the same manner as a district court’s application of 28 U.S.C. § 2107. Read in the context of the statute as a whole, the language in Article 67, UCMJ, 10 U.S.C. § 867 (2000), defines a permissive right to petition this Court — an “accused may petition” the Court. Congress did not specifically limit the amount of time in which an accused must file a petition before this Court; it required that this Court review all petitions filed within sixty days. After sixty days, consideration of a petition is discretionary. Congress had the opportunity to amend this language in light of this Court’s interpretation in 1981. It did not. Instead, Congress changed the modal verb in Article 67(b), UCMJ, from “shall” to “may.” See Military Justice Amendments of 1981, Pub.L. No. 97-81, § 5, 95 Stat. 1085, 1088-89 (1981) (Article 67(c)).
Third, as the Supreme Court recognized in Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), as well as in cases subsequent to Bowles, the military justice system is a distinct system. Supreme Court precedent, including precedent involving the death penalty, does not necessarily apply in the military context, or apply as it does in the civilian context. See Kennedy v. Louisiana, — U.S. -, -, 129 S.Ct. 1, 2, 171 L.Ed.2d 932 (2008) (“[Ajuthorization of the death penalty in the military sphere does not indicate that the penalty is constitutional in the civilian context.”) (order denying rehearing).
As a result, I respectfully dissent. To paraphrase Justice Jackson, this Court should be last, not first, to close the courtroom door to members of the armed forces. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 655, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). Congress did not specifically limit this Court’s jurisdiction, and we should not do so now. “ ‘[Ojnly *121 Congress may determine a lower federal court’s subject-matter jurisdiction.’ ” Bowles, 127 S.Ct. at 2364.

From Ponds to Byrd to Bowles

Since the advent of the UCMJ, this Court has held that the time limits for filing a petition for appeal before this Court do not impose a jurisdictional bar to appeal where there is good cause shown for filing out of time. United States v. Tamez, 63 M.J. 201, 202-03 (C.A.A.F.2006) (per curiam); United States v. Byrd, 53 M.J. 35, 38 (C.A.A.F.2000); United States v. Ponds, 1 C.M.A. 385, 387, 3 C.M.R. 119, 121 (1952) (per curiam). The analysis underpinning this longstanding conclusion is summarized in Byrd, a 2000 opinion in which the five judges on this Court unanimously concluded:
Both Article 67 and Rule 19 are phrased in terms of the opportunity of an appellant to file a petition for review. Neither the statute nor the rule states that the time periods are jurisdictional, nor do they preclude our Court from accepting petitions outside the time period under appropriate circumstances.
53 M.J. at 38.
This analysis was echoed in Tamez, a 2006 per curiam opinion in which this Court again emphasized the importance of civilian oversight of the military instrument, in this case the military justice system, through operation of the United States Court of Appeals for the Armed Forces.
Such a practice is consistent with Congress’s intent that servicemembers have the opportunity to obtain appellate review in an independent civilian court. Were the sixty-day timeline jurisdictional, an appellant might be without appellate recourse in this Court regarding claims such as ineffectiveness of counsel or complaints under Article 13, UCMJ, 10 U.S.C. § 813 (2000). This was not Congress’s intent.
63 M.J. at 202-03 (footnote omitted).
The majority now concludes that Bowles changes over fifty years of consistent precedent because “Congress established without qualification when such petitions must be filed[,]” United States v. Rodriguez, 67 M.J. at 115 (C.A.A.F.2009), and Bowles determined that “[tjhere is ‘jurisdictional significance [in] the fact that a time limitation is set forth in a statute.’ ” Id. at 113 (quoting Bowles, 127 S.Ct. at 2364). This reasoning is flawed.
First, Bowles does not dictate a result. Rather, it enunciates a rule of interpretation. Where Congress has prescribed a time limit for filing an appeal, that time limit is “ ‘mandatory and jurisdictional.’ ” Bowles, 127 S.Ct. at 2363 (citation omitted). Conversely, if a time period in a statute does not prescribe a jurisdictional limit, it is not mandatory. In other words, the Supreme Court did not purport to substitute this general principle of statutory construction for the actual statutory language or expressed congressional intent that may exist in a given statute. Not all timelines are jurisdictional. See id. at 2368 (Souter, J., joined by Stevens, J., Ginsburg, J., and Breyer, J., dissenting) (“But neither is jurisdictional treatment automatic when a time limit is statutory, as it is in this case.”).
Applying this rule of construction, the Supreme Court concluded that 28 U.S.C. § 2107(c), which addresses reopening the time to file a habeas appeal in an Article III district court, is mandatory and jurisdictional, “fbjecause Congress specifically limited the amount of time by which district courts can extend the notiee-of-appeal period_” Bowles, 127 S.Ct. at 2366 (emphasis added). Fed. R.App. P. 4(a)(6) implements § 2107(c), and provides: “The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied....” In contrast, Article 67, UCMJ, does not use comparable prescriptive language.
Second, regardless of what Bowles states or requires, the Supreme Court has repeatedly recognized that military society is distinct from civilian society. As a result, principles of law enunciated by the Supreme Court may apply differently, or perhaps not at all, in military justice practice. See Parker, 417 U.S. at 744, 94 S.Ct. 2547 (“Just as military society has been a society apart from civilian society, so ‘military law[1] ... is a *122 jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment.”) (citations omitted).[1] One role this Court plays is to place Supreme Court, precedent in the military context. See United States v. Marcum, 60 M.J. 198, 205 (C.A.A.F.2004) (“[W]hen considering how [certain laws] apply in the military context, this Court has relied on Supreme Court civilian precedent, but has also specifically addressed contextual factors involving military life.”). Part of that context is the emphasis Congress placed on the opportunity for servieemembers to appeal convictions to a civilian appellate court within the framework of the UCMJ. The majority of this Court, however, places all its emphasis on a mechanical application of Bowles, but misses the equally compelling language from Parker stressing the potential distinction between civilian and military law.
Third, and most importantly, the question before this Court is not whether Bowles applies, but whether the statute to which we are asked to apply Bowles incorporates a congressionally prescribed time limit for filing appeals or a permissive time limit. Did Congress specifically limit the amount of time within which a servicemember must file an appeal? No. To the contrary, this Court concluded in Byrd and Ponds that Article 67, UCMJ, contains a permissive time limit. The UCMJ limited the amount of time in which an appellant could avail himself of the opportunity to petition this Court and as a matter of right have his petition reviewed. In 1981, Congress had the opportunity to amend this language, 'in light of this Court’s understanding of the law. It chose not to do so, as Chief Judge Effron details in his dissent. Now, based on Bowles, a decision construing different language in a civilian statute, a majority of this Court concludes that this Court’s interpretation of Article 67(b), UCMJ, has been wrong since 1952. But while Bowles may give us occasion to revisit the meaning of Article 67, UCMJ, it does not change its meaning.

Article 67, UCMJ

“The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
Article 67, UCMJ, states:
(a) The Court of Appeals for the Armed Forces shall review the record in—
(1) all cases in which the sentence, as affirmed by a Court of Criminal Appeals, extends to death;
(2) all cases reviewed by a Court of Criminal Appeals which the Judge Advocate General orders sent to the Court of Appeals for the Armed Forces for review; and
(3) all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.
(b) The accused may petition the Court of Appeals for the Armed Forces for review of a decision of a Court of Criminal Appeals within 60 days from the earlier of—
Article 67, UCMJ.
At least two interpretations are plausible. First, one can argue that the language prescribes a time limit for filing an appeal. This is the view of the majority. Under this construction, while an appellant “may” file an appeal, “within 60 days” operates as a firm limit on this Court’s jurisdiction and not just a bar on an appellant’s opportunity to petition this Court. That is because section (a)(3), defining this Court’s jurisdiction for good cause shown, is linked to section (b), and review under section (a)(3) is only trig *123 gered “upon petition of the accused.” However, if this reading were correct and compelled, then Ponds, Byrd, and Tamez, et al., would have depended on construing this section as procedural rather than jurisdictional. In that case, Boivles would change the analysis. But Ponds, Byrd, and Tamez, et al., did not rely on this distinction; these cases relied on the plain text of the Article and Congress’s intent.
That is because a second interpretation of Article 67(b), UCMJ, is that the clause creates a permissive timeline for an appellant to file a notice of appeal. He must file “within 60 days” to preserve his right to have this Court review his petition. Otherwise, this Court is not obliged to review his petition. But it does not preclude this Court from doing so if good cause is shown “upon petition of the accused.” Article 67(a)(3), UCMJ.
This reading of the statute is based on the plain language and, in particular, the modal verbs chosen and not chosen. This construction is also based on the placement of the clause within Article 67, UCMJ. The Court’s jurisdiction is defined in section (a) and the appellant’s right to petition is defined in section (b). As important, this reading is consistent with the legislative history cited by the majority, the same history that also informed Byrd and Tamez.
Congress knows how to mandate when it wishes to do so. For example, Congress intended that an accused have the opportunity to appeal to this Court, but should not be required to do so, for the appeal of right rests at the Courts of Criminal Appeals. As a result, it chose the modal verb “may” rather than “shall” to delimit an accused’s right to seek discretionary review before this Court. See Article 67(b), UCMJ. Whether Congress set a time limit for an accused to do so is more ambiguous. Congress could have used words like “shall be filed within 60 days” or “must be filed within 60 days,” or used words similar to the language at issue in Bowles, “but only if’ the accused “files within 60 days.” Instead, Congress chose to use only the phrase “within 60 days.” Nevertheless, it is reasonable to conclude based on the legislative history that this language represents a filing deadline. But it is a deadline on the accused, not a “specific limitation” on this Court’s jurisdiction.
Had Congress wished to “specifically limit” this Court’s jurisdiction it would have amended Article 67(a)(3), UCMJ, which addresses this Court’s discretionary jurisdiction. For example, Congress could have amended this clause to state that this Court shall hear an appeal “upon good cause shown, provided that such petition is filed within 60 days.” Or, if Congress intended to specifically limit this Court’s jurisdiction in Article 67(b), UCMJ, it could have directed the filing deadline to this Court rather than the accused. That is what Fed. R.App. P. 4(a)(6), the rule implementing the statute at issue in Bowles, directs by using the words “but only if.” The predicate statute is equally express in its mandatory effect: “no appeal shall bring ... before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.” 28 U.S.C. § 2107(a) (emphasis added). Most importantly, Congress used prescriptive language in defining this Court’s jurisdiction in Article 67(a), UCMJ:
(a) The Court of Appeals for the Armed Forces shall review the record in—
(3) all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.
(Emphasis added.)
Congress knows the difference between “shall” and “may” and between “must” and “may.” In this statutory clause, it chose “may.” For sure, “may” can convey prescription, as in the case of Bowles, where district courts may hear petitions, but only if the filing deadline is met. Indeed, as the majority notes, in 1981, Congress changed section (b) from “shall” to “may” while extending the period during which an appellant may file a petition to this Court. But Congress did not choose to alter this Court’s jurisdiction at the same time. Against the backdrop of twenty-nine years, starting with Ponds, of the Court interpreting this section *124 of the law as a permissive right of an accused to petition, as opposed to a prescription on the jurisdiction of this Court, Congress did not specifically limit this Court’s jurisdiction. To the contrary, Article 67(a), UCMJ, continues to state that this Court “shall review” the record in all cases upon petition of the accused and on good cause shown. Thus, the presence of the modal verb “shall” in Article 67(a), UCMJ, is as important as the absence of such a verb in Article 67(b), UCMJ.
Nonetheless, the majority concludes that there is only one possible way to read the statute, and that interpretation is in a manner inconsistent with how Article 67, UCMJ, has been read for over fifty years. Recall, Bowles does not purport to rewrite or change the law; it only insists that courts give full effect to statutory timelines where “Congress specifically limited the amount of time” within which a court is authorized to hear an appeal. 127 S.Ct. at 2366. Congress has not “specifically limited the amount of time” within which this Court may, of its own accord, consider a petition for review. This conclusion is all the more evident when the statutory text is considered in the context of the statute as a whole.

The Broader Context of the Statute as a Whole

The text of Article 67, UCMJ, does not appear in a vacuum. Rather, it appears within the structure of the UCMJ, which defines a distinct system of military justice based on four pillars relevant to this case.
First, Congress intended that this Court provide civilian oversight of the military justice system through exercise of appellate jurisdiction. This Court’s role is to provide for military discipline and to uphold the rights of servicemen and women in the criminal context. Henceforth, such review shall be foreclosed to appellants. who are negligent or indecisive in seeking appeal, even when these appellants show good cause for delay. But it will also be denied to. appellants whose counsel fail to timely appeal or, where through administrative oversight, the appellate defense offices miss deadlines. And it will be denied to appellants who do not understand the system or how to activate it. These may be just the servicemembers for whom Congress felt civilian review might be particularly important.
Second, Congress recognized that the military justice system would draw on civilian principles of law, but nonetheless operate as a distinct and separate system of justice. The Supreme Court has recognized this distinction, as well. Parker, 417 U.S. at 743, 94 S.Ct. 2547. Most recently, and after Bowles, the Supreme Court reiterated the distinction in Kennedy. 129 S.Ct. at 2 (“The laws of the separate States, which have responsibility for the administration of the criminal law for their civilian populations, are entitled to considerable weight over and above the punishments Congress and the President consider appropriate in the military context.”) (order denying rehearing). It is in this context that Congress also intended the exercise of civilian oversight through this Court to buttress public confidence that the military justice system is fair and operates in a manner consistent with constitutional values.
This is especially true in a system where the government determines how physical and human resources are allocated for defense purposes. It is the government that is responsible for staffing the military justice system. It is the government that assigns appellate defense counsel. It is the government that provides administrative support to the appellate defense offices. And, it is the government that provides computer service to these offices. It is also the government that now, at this Court’s invitation, seeks to foreclose civilian appellate review in cases where allegations emerge that military appellate counsel provided ineffective assistance of counsel (IAC) or that the government-staffed appellate defense office’s processing of the appeal may be flawed.
Third, Congress intended the UCMJ to be applied in a uniform manner across services through operation of a central appellate court. In reversing over fifty years of precedent by foreclosing appeals beyond the permissive sixty-day limit, the Court now invites collateral civilian appellate review in those cases where legitimate questions of service *125 or constructive service are engaged, or where questions of IAC are alleged.
With the doors to this Court now closed, appellants are left with two possible avenues of appeal. First, appellants could petition the Judge Advocate General (TJAG) to appeal on their behalf using the certification mechanism. Among other things, this would undermine the notion of independent civilian oversight of the military justice system, as the TJAGs would effectively serve as gatekeepers to this Court. It would also remove the “good cause” threshold from this Court’s consideration of petitions, but not for certified appeals falling within this Court’s mandatory review. Further, there are obvious bureaucratic incentives for the TJAGs, during a time of operational demand and staffing constraints, to limit use of this option if it were used at all.
Second, and more likely, appellants will seek appellate review through the habeas Article III process, including any claims of IAC that might pertain to the failure to timely file a petition. This approach runs contrary to Congress’s intent to have a uniform application of the law through exercise of unified appellate jurisdiction. Indeed, there is not only a risk of inconsistent service results, but also a risk of inconsistent approaches to military law between appellate and habeas jurisdictions. This might occur, for example, where an accused challenges the application of a new article in the UCMJ or a change to the Rules for Courts-Martial, but finds this courthouse closed on account of a “late” petition. Good cause would otherwise be shown to consider statutory and manual issues of first impression reaching across the services. Also, consider that where an accused raises questions of first impression involving the application of constitutional law in military context, these questions will certainly be answered in the Article III context. They should be, absent the opportunity to do so before this Court.
Fourth, Congress designed a deployable and flexible system of military justice with permanent courts in Washington and temporary trial courts in the field. As a result, the military justice system is ill-suited to now address the predicate factual issues that will arise as this Court, the government, and appellants try to identify and demonstrate the moment at which this Court’s jurisdiction did or did not expire.[2] For example, consider the prospect that appellants and their counsel will now be compelled to factually contest issues of constructive service in order to demonstrate that they should have the opportunity for this Court to consider their petition. Putting aside the obvious point that judicial economy would be better served by having this Court consider whether there was good cause to grant a petition before litigating the facts, the military justice system is not well-suited to adjudicate the questions of jurisdictional fact that Congress avoided and this Court now creates. With no standing trial courts, this will presumably be done using the DuBay hearing mechanism. United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). Alternatively, Courts of Criminal Appeals might use their factfinding authority, but if so, adverse rulings to an appellant will necessarily have to be appealed using Article III habeas petitions. Did Congress intend that constructive provisions of the UCMJ and ineffective assistance of appellate counsel claims for missing deadlines be adjudicated using the habeas mechanism?

Conclusion

Bowles did not decide that all statutes with timelines are prescriptive, mandatory, and jurisdictional. It decided that, where Congress specifically prescribed a jurisdictional timeline, the timeline was mandatory. Based on the plain language used in Article 67, UCMJ, and the context of the statute as a *126 whole, it is clear Congress did not do so. As a result, Ponds, Byyd, and Tamez remain good law. Given Congress’s intended role for this Court, this Court should be last, and not first, to close the courtroom door to military appellants.

. This point is driven home by the Supreme Court's denial of reconsideration in Kennedy, 129 S.Cl. at 3 (order denying rehearing). In that case, the Supreme Coürt did not consider the military death penalty for child rape in its original opinion when it sought to analyze the national consensus for this punishment. Id. at 1. The Court denied a rehearing, stating that Kennedy "involves the application of the Eighth Amendment to civilian law; and so we need not decide whether certain considerations might justify differences in the application of the Cruel and Unusual Punishments Clause to military cases....” Id. at 2.

. This Court will also need to amend its rules. C.A.A.F. R. 19(a)(3) states that "a petition for grant of review will be deemed to have been filed on the date when the petition has been mailed or delivered by an appellant or by counsel on behalf of an appellant directly to the Court.” However, if the sixty-day limit is jurisdictional and manda-toiy, it must have a definitive termination point. Thus, it must either terminate on the date when a petition is mailed or it terminates on the date that the petition is received. This Court cannot choose between the two when the sixty-day deadline is mandatory and jurisdictional.