**UNITED STATES**

v.

**Technical Sergeant Stanley DOWLAT,
FR 198–48–8970, United States
Air Force.**

**ACM 27459.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Oct. 1988.

Decided 5 June 1989.

Appellate Counsel for the Appellant: Jeffrey Stachewicz, Oxon Hill, Maryland; Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Morris D. Davis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

Technical Sergeant Dowlat was a 29 year old military training instructor assigned to Lackland Air Force Base, Texas. He was tried by a military judge sitting alone as a general court-martial for several offenses involving basic trainees, violations of Arti-

cles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. He was convicted of dereliction of duty by threatening to recycle two male airmen into further training, soliciting seven trainees to breach regulations and attend an off-base party, obstructing justice, and developing personal relationships with two female trainees in violation of a lawful general regulation. His approved sentence is a bad conduct discharge, confinement for 18 months, forfeiture of $200.00 per month for 18 months, and reduction to airman basic.

Relationship With Airman Basic W

In August 1988, Sergeant Dowlat began inviting Airman Basic (AB) W and AB G, both female trainees, into his office in the male dormitory after duty hours. W's duties for Sergeant Dowlat were those of a "house mouse"—cleaning the office and performing various clerical work. AB G assisted AB W in these tasks. Sergeant Dowlat provided the two trainees candy, soft drinks, cigarettes, and on two occasions, food from fast food establishments. According to testimony of W and G, trainees are only allowed sodas and candy in a specified area and they are not allowed to smoke or enjoy fast food items. When W flunked a military test, Sergeant Dowlat gave her a two-hour pass to go off base. He also assembled a group of troops to sing "Happy Birthday" to her and had a photograph taken of himself with his arms around the waists of G and W.

Meanwhile, Sergeant Dowlat had become romantically involved with AB G. Eventually, they engaged in sexual intercourse at the appellant's off-base townhouse.

Just before graduation, Sergeant Dowlat hosted a party for three male and four female basic trainees—including W and G.

He drove them to his off-base townhouse, where the group consumed alcohol, watched television, and paired off in separate rooms. Trainees are prohibited from going off base or travelling in private vehicles without proper authorization.

As a result of his conduct with AB W and G, the appellant was tried for violating a lawful general directive, Air Training Command Regulation 30–4; it prohibits staff members from attempting to develop a personal relationship with a student.[1]

The appellant pleaded guilty to violating this regulation by his conduct with AB G; however, he pleaded not guilty to any such violation with AB W. The military judge found him guilty of both specifications. In regard to AB W, however, the military judge excepted the operative words of the pertinent provision—"Paragraph 4b5(a)"—and substituted therefore the words "Paragraph 4b(5)" to particularize the standard violated by the appellant. The appellant challenges his conviction for his relationship with AB W, mounting a sweeping Constitutional attack on the regulation as failing for vagueness and overbreadth.

█ We elect not to reach the Constitutional issue broached by the defense since this matter can be resolved on the more basic ground that appellant's conduct did not violate Air Training Command Regulation 30–4 as written.

Proper relationships between instructors and subordinate students are indispensable to military discipline. As the Court of Military Appeals articulated it in *United States v. Adames*, 21 M.J. 465, 467–468 (C.M.A. 1986):

Where the subordinates are trainees, the [armed forces have] an enhanced in-

---

1. Air Training Command Regulation 30–4, Professional Conduct and Relationships, is dated 30 August 1984. It is punitive in nature and provides as follows at paragraph 4:

b. *Faculty and Staff.* Except when authorized by their commander, no faculty or staff personnel will directly or indirectly, personally, or through other persons:

\* \* \* \* \* \*

(5) Attempt to develop a personal relationship with any student. Specifically, faculty and staff personnel will not:

(a) Make sexual advances toward, seek or accept advances from students, and will avoid the appearance of such conduct.

(b) Date any student assigned or attached to the same installation.

(c) Use rank or position, threats, pressure, or promise of return favors or favorable treatment in an attempt to gain sexual favors from students, and will avoid the appearance of such conduct.

terest because trainees, who usually have limited military experience and are subject to very intensive supervision and control by their superiors, are vulnerable to the taking of unfair advantage by those superiors. In turn, such conduct by the superiors diminishes the respect with which they are viewed by the trainees—a respect essential for inculcating discipline. To avoid the consequences, almost every training command has directives which prohibit various types of social relations between trainees and the officers and noncommissioned officers who constitute the command's permanent party or cadre.

Premised on this view of military good order, we have no hesitation in condemning the appellant's conduct as to AB G; however, we find the picture distinctly different with regard to AB W.

■ We hold that the appellant did not violate the regulation by his conduct toward AB W. There is a basic rule of statutory construction applicable in this situation: When a particular form of conduct is prohibited, there is an inference that all omissions should be understood as exclusions. This is the ancient Latin maxim *expressio unius est exclusio alterius. See* 2A Sutherland *Statutory Construction* (Singer ed. 1984) Sec. 47.23 and *United States v. May,* 27 C.M.R. 570, 573 (A.B.R. 1958). As Professor Singer explains it, there is nothing legalistic or esoteric about the concept—it is simply a matter of common experience that when people say one thing they do not mean something else. Sutherland at Sec. 47.24.

Paragraph 4b5(a) regulates sexual activities between instructors and students; the single focus of subparagraphs (a), (b), and (c) is on dating and sexual contacts. Applying well-recognized rules of statutory construction, we hold that providing sweets, cigarettes, a two-hour pass, or the like are not rationally prohibited by the pertinent paragraph. Thus, given these three subparagraphs enumerating forms of

forbidden sexual conduct, we will not permit a conviction to stand based on a completely different form of non-sexual mischief. *See generally United States v. Adames, supra,* and *United States v. Mabazza,* 3 M.J. 973 (A.F.C.M.R.1977), *vacated on other grounds,* 4 M.J. 79 (C.M.A. 1977), *aff'd on further review,* 5 M.J. 660 (A.F.C.M.R.1978), *pet. denied,* 6 M.J. 6 (C.M.A.1978).[2]

The military judge found the appellant guilty—by substitutions and exceptions—of merely the stem of paragraph 4b(5). The judge thus attempted to transform a prohibition on sexual contacts into a vague, generalized ban on various "personal" relationships. We are unwilling to permit such a change of legal horses midstream. Paragraph 4b(5)(a) attacks sexual misconduct—and only that. It may be laudable for the authors of the regulation to ban various instructor-student associations. That is theirs to say. However, they must accomplish it in a more straightforward manner than the current wording of the regulation.

### Obstruction of Justice

■ Sergeant Dowlat was also convicted of obstruction of justice in that he contacted AB G, a potential witness against him, asking that the seven airmen he had taken to an off base party meet to "get the story straight." He now asserts that he cannot be found guilty of obstruction of justice under Article 134. He premises his argument on the opinion of this Court in *United States v. Chasteen,* 17 M.J. 580, 581 (A.F.C.M.R.1983) *aff'd in part and rev'd in part,* 24 M.J. 62 (C.M.A.1987).

In *Chasteen,* two specifications of obstruction of justice in violation of 18 United States Code Section 1510 were charged under Article 134. The accused sought to have co-conspirators stonewall any questions as to their participation in an elaborate "marriage for hire" and black marketing ring. This Court held the evidence insufficient to support a conviction for obstructing justice under Title 18; the Title 18 offense, we held, was designed to deter

---

**2.** It is possible that the appellant might be guilty of the lesser included offense of dereliction of duty. In the present case, however, there is

insufficient testimony of record to convince us that the issue was properly raised.

interference with potential witnesses prior to initiation of judicial proceedings—not to deal with communications between accomplices.

*Chasteen* is inapposite to the present situation. In the first place, that was a limited fact situation in which the parties remained as co-conspirators of the marriage-for-hire and black market operations. Here, a Technical Sergeant careerist took seven young trainees not yet graduated from basic training to an off-base party. In practical terms, we do not regard their relationship as a continuing conspiracy—particularly since the trainees had already been punished by non-judicial punishment at the time of trial. *See* MCM, Part IV, paragraph 5c(9) and *United States v. Stroup*, 24 M.J. 760, 764 (A.F.C.M.R.1987). *See generally* Saltzburg and Redden, *Federal Rules of Evidence Manual* (1986) 785–788. Moreover, we read *Chasteen* as limited to United States Code violations, not actions based directly on the Uniform Code of Military Justice. *See United States v. Rehak*, 25 M.J. 790 (A.C.M.R. 1988). Finally, a broadening of *Chasteen* appears to run counter to the mainstream of current legal thinking. *See United States v. Swafford*, 766 F.2d 426 (10th Cir. 1985); *United States v. Murray*, 751 F.2d 1528 (9th Cir.1985), *cert. den.* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 335; *United States v. Koehler*, 544 F.2d 1326 (5th Cir. 1977). The *Chasteen* case is based on *United States v. Cameron*, 460 F.2d 1394 (5th Cir.1972). Whatever the strength of the *Cameron* analysis, we believe it fact-specific and inapplicable to the present situation.

### Legality Of Pretrial Confinement

■ Sergeant Dowlat argues that his pretrial confinement was impermissible. Charges were preferred against him on 29 August 1988. Some of the offenses charged involved alleged threats he had made to trainees to block them from disclosing data which could be used against him. He also constantly attempted to contact AB G. As a result, the appellant's commander ordered him on both 29 August and 1 September 1988 to stay away. On 15 September 1988, an additional charge of obstruction of justice was preferred; his commander advised the appellant not to attempt contacting any of the airmen unless he did so through or upon the advice of his defense counsel. Nonetheless, on 24 September, appellant attempted to meet with AB G. This is what led to the 26 September pretrial confinement.

At trial, the appellant moved for appropriate relief, claiming that he should receive additional credit for 17 days of illegal pretrial confinement. The military magistrate testified at the court-martial, and the military judge denied the motion for relief. Before us, the appellant persists in his contention that he is entitled to credit because his commander's initial order not to contact witnesses was illegal.

We find no reversible error here. The commander had made it clear to the appellant by 15 September that contact only through or upon the advice of counsel was permissible. Yet the appellant continued to attempt by himself to contact and influence witnesses. The follow-on confinement in this case was perfectly legal.

### Sentence Reassessment

■ The appellant argues that his sentence was not appropriate. In particular, the defense argues that the appellant made only one mistake: "to befriend some of his trainees near the end of their training."

In essence, Sergeant Dowlat jeopardized his position of authority when he developed a personal relationship with AB G; threatened to recycle two airmen who thought his planned off-base party with seven trainees was unwise; solicited seven trainees to violate a regulation applicable to them as to going off base in privately-owned vehicles while they were still in a training status; and by trying to obstruct justice prior to his court-martial. We believe an honest reading of the record shows that the appellant violated both the letter and the spirit of what was required of him as a military instructor. Accordingly, we believe he merits no sentence relief upon this basis.

We set aside the findings of guilty of specification 2 of Charge I and dismiss that specification. Because of this, we will reassess the sentence. We approve so much of the findings of guilty, as modified, and the sentence, as extends to a bad conduct discharge, confinement for 16 months, forfeiture of $200.00 per month for 16 months, and reduction to airman basic.

The findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge LEWIS and Judge BLOMMERS concur.