# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Wilson MEDINA
### Gunner's Mate First Class (E-6), U.S. Coast Guard

## CGCMG 0261

## Docket No.  1325

## 7 November 2012

General Court-Martial convened by Commander, Maintenance and Logistics Command, Atlantic.  Tried at Norfolk, Virginia, on 11 March 2009.

| | |
|---|---|
| Military Judge: | CAPT Gary E. Felicetti, USCG |
| Trial Counsel: | LT Kismet R. Wunder, USCGR |
| Assistant Trial Counsel: | LT Kelly C. Blackburn, USCGR |
| Defense Counsel: | LT Stuart T. Kirkby, JAGC, USN |
| Appellate Defense Counsel on remand: | LCDR Paul R. Casey, USCG |
| Appellate Government Counsel on remand: | LCDR Vasilios Tasikas, USCG |

### BEFORE
### McCLELLAND, HAVRANEK & DUIGNAN
Appellate Military Judges

DUIGNAN, Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of sodomy, in violation of Article 125, Uniform Code of Military Justice (UCMJ); and one specification of assault consummated by a battery, in violation of Article 128, UCMJ. The military judge sentenced Appellant to confinement for thirteen months, reduction to E-1, and a bad-conduct discharge.  The pretrial agreement had no effect on the sentence, and the Convening Authority approved the sentence as adjudged.

This case is before us a second time.  Initially, Appellant sought relief before this Court based upon unreasonable and unexplained post-trial delay.  On 24 September 2010, we affirmed

the findings of guilty, but only approved so much of the sentence as provided for confinement for eleven months, reduction to E-2, and a bad-conduct discharge. *United States v. Medina*, 69 M.J. 637, 641 (C.G.Ct.Crim.App. 2010). On 23 May 2011, the Court of Appeals for the Armed Forces vacated our decision and remanded the case for reconsideration in light of *United States v. Hartman*, 69 M.J. 467 (C.A.A.F. 2011).

On remand, Appellant asserts two errors. First, he urges that his sodomy conviction was unconstitutional because his conduct fell within a protected liberty interest, and did not meet the constitutionally required factors for a conviction under Article 125, UCMJ. Second, he argues his plea was improvident because the military judge failed to distinguish between constitutionally protected and criminal behavior, and thus failed to explain that distinction to Appellant during the plea inquiry. This Court also specified a third issue for argument, asking whether, if the conviction of sodomy is set aside, the Court may reassess the sentence.

We heard oral argument on 7 May 2012. We resolve this case on the second issue, and therefore need not reach the first. We hold that the plea to consensual sodomy was improvident and set aside the conviction under Article 125, UCMJ. Further, we hold that sentence reassessment is inappropriate under the circumstances of this case and remand for a new trial on the sodomy charge. However, in light of the procedural posture of this case, if the government deems it impractical to re-try Appellant for the sodomy charge, the Convening Authority can instead order a sentence rehearing on the remaining charge of assault consummated by a battery.

**Facts**

Appellant was assigned as a company commander, training new recruits at Coast Guard Training Center Cape May. He served as the assistant company commander for a recruit company that graduated from basic training in late October 2007. After graduation, one of the graduates in that company, Seaman JM, was permanently assigned to Coast Guard Station Cape May, a small-boat station adjacent to Training Center Cape May.

About a week after Seaman JM arrived at Station Cape May, Appellant invited him to Appellant's off-base residence to watch a boxing match with Appellant and his family. Seaman

JM accepted the invitation. The group ate dinner, played games, and watched the boxing match, after which Appellant's wife and children retired to bed. Appellant and Seaman JM had drunk a significant amount of alcohol.

After some conversation, without permission, Appellant pushed his hand down Seaman JM's pants and grabbed his penis. Seaman JM forcibly removed Appellant's hand from his pants and expressed his disapproval, stating that everything Appellant had taught him at boot camp was "out of the window." Appellant apologized. Seaman JM then asked if he could spend the night at Appellant's house. Appellant agreed and provided a bed in an extra bedroom. Shortly thereafter, Appellant went to the extra bedroom, pulled down Seaman JM's pants, and performed oral sex on him.

### Providence of Plea to Consensual Sodomy

"The fundamental requirement of plea inquiry under *Care* and R.C.M. 910 involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct." *Hartman*, 69 M.J. at 469. In order for a plea to consensual sodomy to be provident, an accused must understand and knowingly acknowledge that he has a full and complete understanding of the elements of the offense, the criminality of his conduct, and why his conduct was not constitutionally protected consensual sexual conduct. *Id.* at 468-69. "In the absence of a dialogue employing lay terminology to establish an understanding by the accused as to the relationship between the supplemental questions and the issue of criminality, [the plea cannot be viewed] as provident." *Id.* at 469.

Here, Appellant received an explanation on the record that defined the elements of sodomy as outlined under the Manual for Courts-Martial, United States (2008 ed.), Pt. IV, ¶ 51b, but the military judge added an element requiring the conduct in question to be "prejudicial to good order and discipline" in an effort to take the conduct outside the liberty interest described in *Lawrence v. Texas*, 539 U.S. 558 (2003), as applied to the military in *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), and *United States v. Stirewalt*, 60 M.J. 297 (C.A.A.F. 2004). (R. at 68-70.)

3

The relevant on-the-record colloquy between the military judge and Appellant regarding the sodomy charge started with the following:

> MILITARY JUDGE: So given how close in time it was between when he was your . . . you know, boot, if you will – a member of your Company – and you were his Company Commander, and this event . . . do you agree that it was unlikely that he could easily refuse your – your advance?
>
> DEFENSE COUNSEL: Don't answer that. Sir, I'm going to object as to the scope of that question. I – I understand . . .
>
> MILITARY JUDGE: Well, then you're objecting to the Stipulation of Fact – Paragraph E.
>
> DEFENSE COUNSEL: Sir, my – my concern is . . . And I understand the Stipulation of Fact, and I'm – I'm not objecting to it. I. . . My concern is the act itself, that's already been admitted to as the Charge that we're pleading guilty to. We understand the – the factors for the *Marcum* inquiry . . .
>
> MILITARY JUDGE: Mmm-hmm.
>
> DEFENSE COUNSEL: . . . and I'm – I'm concerned that the Court is focusing . . . I understand the Court needs to – to meet those factors, and get us within the realm of that, and away from the Supreme Court decision.
>
> MILITARY JUDGE: Mmm-hmm.
>
> DEFENSE COUNSEL: My concern is – is the – is the degree to which we go into that, making this a nonconsensual act – and the focus of that. I'm treading a tightrope here, sir, and . . . trying to get us through providency adequately while not throwing my client to the – to the wolves, as it were.
>
> MILITARY JUDGE: I understand. But I'm considering this solely for the purpose of ensuring that this was prejudicial to good order and discipline and was not within a protected consensual conduct.

(R. at 75-76.)

After this first attempt by the military judge to question Appellant about the underlying act and to analyze the facts in this case under the factors discussed in *Marcum*, *supra*, the military judge changed tack and tried again with the following:

> MILITARY JUDGE:  Tell me – you know, why this consensual sodomy was prejudicial to good order and discipline, or Service-discrediting.
>
> GM1 MEDINA:  Because I was. . . Sir, because I was an E-6 and he was an E-3, and I was his former Company Commander, sir.
>
> MILITARY JUDGE:  Okay.  And based on. . . I think we've talked about what that meant, by being his former Company Commander?
>
> GM1 MEDINA:  Yes, sir.

(R. at 77.)

The military judge was clearly attempting to elicit from Appellant facts supporting a conclusion that his conduct fell outside of a constitutionally protected liberty interest and the *Marcum* factors.  But this discussion fell short of *Hartman*'s requirements.  The military judge did not explain to or discuss with Appellant why his particular conduct was of such a nature that it fell outside the bounds of a constitutionally protected liberty interest.  Although the military judge indirectly touched on the fact that Appellant's sexual acts with someone who had recently been a "boot" under his charge as a company commander could potentially override the liberty interest, there was no further explanation beyond a bare inquiry into the existence of the former company commander relationship and the E-6/E-3 grade differential.  The record also does not establish that Appellant was pleading guilty because he believed his conduct was outside the scope of sexual conduct protected under current case law.  For these reasons, we hold Appellant's guilty plea to consensual sodomy was improvident, and we set aside the conviction.

### Sentence Reassessment

In the interest of judicial economy, we specified an additional issue asking whether, if we set aside the conviction for sodomy, we could reassess the sentence.  When conviction of one or more offenses is set aside, a Court of Criminal Appeals may reassess a sentence when it can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at

least a certain severity; a sentence of that severity or less will be free of the prejudicial effects of error. *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006) (citing *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)). Or, stated another way, if the Court of Criminal Appeals cannot reliably determine what sentence would have been imposed at the trial level had the error not occurred, then a rehearing on sentence is in order. *Sales*, 22 M.J. at 307. Appellant's sentence – already reduced once for unexplained post-trial delay – is currently eleven months confinement, reduction to E-2, and a bad-conduct discharge. We now set aside the sodomy conviction and Appellant stands convicted of only one charge and specification of assault consummated by a battery. If Appellant had been sentenced for this charge alone – a charge carrying only a maximum punishment of six months confinement, reduction to E-1, forfeiture of all pay and allowances for six months, and a bad-conduct discharge – we cannot say with confidence what Appellant's sentence would have been under all of the circumstances.

We do not share the dissenting judge's confidence that we can satisfactorily determine a minimum sentence. The maximum confinement authorized for the remaining charge is merely six months – only one-tenth the confinement authorized for the conviction we are setting aside. Further, a dishonorable discharge may no longer be adjudged for the remaining charge. In other American criminal justice systems, the dismissed offense would be considered a felony and the remaining offense would be considered a misdemeanor. *See*, *e.g.*, 18 U.S.C. § 3559. This is a substantial change in the sentencing landscape.

Although it is true that the offense occurred between a company commander and his former trainee, in other ways the facts supporting conviction of the assault consummated by a battery are not especially aggravated. The initial touching was successfully resisted by Seaman JM. Appellant apologized. Seaman JM then asked if he could spend the night at Appellant's house. Appellant agreed and provided a bed in an extra bedroom. While Seaman JM may have testified he lost confidence that Appellant was a superior military role model, he did not leave Appellant's house because of the touching. There is no evidence that Seaman JM suffered any long-term harm as a result of that offense. We are not convinced that Appellant would have received both significant confinement and a bad-conduct discharge for the assault consummated by a battery alone.

Therefore, we will not reassess the sentence here.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. We affirm the findings of guilty to Additional Charge I and its specification. We set aside the consensual sodomy conviction under Charge II and its specification. A new hearing on findings for the sodomy charge and the sentence may be ordered. If the Convening Authority decides that doing so is impracticable under the circumstances, a rehearing may instead be ordered on the sentence for the charge of assault consummated by a battery. If rehearing on sentence is also impracticable, the Convening Authority may approve a sentence of no punishment.

Chief Judge MCCLELLAND concurs.

HAVRANEK, Judge (concurring in part and dissenting in part):

I agree with Judge DUIGNAN and Chief Judge MCCLELLAND that Appellant's guilty plea to consensual sodomy was improvident and that the conviction entered on the plea must be set aside. I disagree, however, that this Court may not reassess Appellant's sentence.

Appellant pleaded guilty to and was convicted of one charge and specification of sodomy, in violation of Article 125, Uniform Code of Military Justice (UCMJ), and one charge and specification of assault consummated by a battery, in violation of Article 128, UCMJ. The military judge sentenced Appellant to confinement for thirteen months, reduction to E-1, and a bad-conduct discharge, and the Convening Authority approved the sentence as adjudged. This Court subsequently reduced Appellant's sentence to confinement for eleven months, reduction to E-2, and a bad-conduct discharge.

As a result of this Court's present decision to set aside Appellant's conviction for sodomy, Appellant now stands convicted of a single charge and specification of assault consummated by a battery. The maximum punishment for one specification of assault consummated by a battery is a bad-conduct discharge, forfeiture of all pay and allowances, and

confinement for six months. Manual for Courts-Martial, United States (2012 ed.), pt. IV, para. 54.e.(2). Because Appellant's sentence of confinement for eleven months exceeds this maximum, it must be modified.

This Court may reassess Appellant's sentence if it can be reasonably certain as to the minimum severity of the sentence Appellant would have received at the time of his original sentencing hearing if convicted of a single specification of assault consummated by battery. *United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986). If the Court cannot be reasonably certain, then it "should not reassess the sentence but should order resentencing at the trial level." *Id.* at 307 n.3.

In his concurring opinion in *United States v. Moffeit*, Judge BAKER identifies three factors that make a Court of Criminal Appeals "more likely to be certain" of the minimum severity of the sentence that an appellant would have received at the time of his original sentencing hearing. 63 M.J. 40, 43 (C.A.A.F. 2006) (Baker, J., concurring). First, a Court of Criminal Appeals is more likely to be certain when an appellant chose to be sentenced at the trial level "by military judge alone" rather than by "a panel of members." *Id.* Second, when an appellant's affirmed convictions are for offenses with which the court is familiar and experienced. *Id.* Third, when there are no significant "changes in the penalty landscape" (e.g., different aggravating or mitigating circumstances) as a result of the changes to the findings of fact and convictions entered at the trial level. *Id.*; *accord United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) ("A dramatic change in the penalty landscape gravitates away from the ability to reassess." (quotation omitted)).

When a Court of Criminal Appeals reassesses a sentence rather than ordering resentencing at the trial level, "it promotes judicial economy, economy of military force, and the government's and the appellant['s] interests in finality." *Moffeit*, 63 M.J. at 43 (Baker, J., concurring); *accord United States v. Peoples*, 29 M.J. 426, 429 (C.M.A. 1990) ("[W]e are well aware that it is more expeditious and less expensive for the Court of Military Review to reassess the sentence than to order a rehearing on sentence at the trial level."). Moreover, sentence reassessment by a Court of Criminal Appeals "is fair in situations where [appellate judges] can

indeed reliably determine what the factfinder would have done." *Moffeit*, 63 M.J. at 43 (Baker, J., concurring). "Although reassessment does not provide [the appellant] an opportunity to be present or to offer new evidence in mitigation and extenuation, this procedure complies with constitutional requirements, and it has often been employed . . . without criticism." *Sales*, 22 M.J. at 307 (citation omitted). Sentence reassessment is well established as an efficient and fair procedure for Courts of Criminal Appeals to exercise when granting relief for a prejudicial error. *See Peoples*, 29 M.J. at 429 ("We have great confidence in the ability of the Court of Military review to reassess sentences in order to purge the effects of prejudicial error at trial.").

In this case, I am confident that the Court can perform a sentence reassessment and need not return the case to the Convening Authority for resentencing. I find that the Court can be reasonably certain as to the minimum severity of the sentence that Appellant would have received from the military judge at the time of his original sentencing hearing had he stood convicted only of one specification of assault consummated by a battery. All three of the factors identified by Judge BAKER in *Moffeit* are present in this case. First, Appellant entered pleas of guilty and chose a forum of military judge alone. Second, this Court is certainly familiar and experienced with the offense for which Appellant now stands convicted, one specification of assault consummated by battery. This offense is all too common, and understanding its nature does not present unique or complex challenges. *See generally United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) ("[M]ilitary judges are presumed to know the law . . . . Certainly, appellate judges of the Courts of Criminal Appeals are deserving of no less a presumption." (citations omitted)). Finally, the Court's present decision to set aside Appellant's conviction for sodomy does not dramatically change the penalty landscape with respect to Appellant's conviction for assault consummated by a battery. The Court set aside Appellant's conviction for sodomy because the military judge erred in conducting a plea examination dialogue with Appellant before accepting Appellant's guilty plea. The facts underlying Appellant's conviction for assault consummated by a battery are exactly the same now as they were at the time Appellant was originally sentenced. Because the facts of the case remain unchanged, I conclude that there is no significant change in the penalty landscape.

Based on the facts of this case, I am reasonably certain that Appellant would have received a sentence *at least as severe as* confinement for four months, reduction to E-2, and a bad-conduct discharge at the time of his original sentencing hearing. I am convinced that Appellant's conduct in assaulting one of his former recruits was of sufficient severity and of such detriment to the United States Coast Guard that he would receive, at a minimum, a sentence that would include confinement for four months, reduction to E-2, and a bad-conduct discharge. As a Company Commander, Appellant was responsible for indoctrinating new recruits into the customs and practices of military life. (R. at 41.) As a Company Commander, Appellant "served in a role of 'parent, teacher, supervisor, [and] mentor.'" (R. at 45.) Military courts have long recognized the "special relationship between non-commissioned officers and trainees." *United States v. Simpson*, 58 M.J. 368, 377 (C.A.A.F. 2003). Abuse of the trust and respect arising from this relationship does serious damage to morale and discipline.

In this case, although the victim was no longer Appellant's Company Commander at the time of the assault, the assault must still be viewed in the context of the unique trainer-trainee relationship that existed between Appellant and the victim. Even after a formal training relationship has ended, a Company Commander remains a role model and paragon of military values in the eyes of his former trainees. Review of the record leaves no doubt that the victim continued to hold Appellant in particular esteem even after his training ended. There is also no doubt that Appellant's assault deeply disillusioned the victim and caused him to lose faith in the Coast Guard ethos. Appellant testified that the victim explained after the assault that everything that Appellant taught "at boot camp was out of the window." (R. at 66.) This testimony illustrates the point that a Company Commander/trainer's unlawful conduct undermines the entire military training system regardless of whether it occurs during a formal trainer-trainee relationship or not. While Appellant did not violate the letter of the special rules that applied to trainer-trainee relationships, I find that he certainly "violated . . . the spirit of what was required of him as a military instructor," *United States v. Dowlat*, 28 M.J. 958, 961 (A.F.C.M.R. 1989), and I believe that the military judge responsible for sentencing him would have considered this information even if Appellant stood convicted only of assault consummated by a battery. In light of the facts of this case, as elicited during the providence inquiry, I am reasonably certain that the

military judge would have imposed a sentence *at least as severe as* four months confinement, reduction to E-2, and a bad-conduct discharge.

Given the circumstances of this case, I "perceive no reasonable possibility of benefit to [Appellant]" by remanding this case to the Convening Authority for a rehearing on sentence. *United States v. Rushing*, 11 M.J. 95, 98 (C.M.A. 1981). Accordingly, I would reassess Appellant's sentence now.

For the foregoing reasons, I dissent from the majority's decision not to reassess the sentence.



For the Court,


Andrew R. Alder
Clerk of the Court