****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Captain KIRKLAND C. NETTLES
## United States Air Force

### ACM 38336

### 21 April 2014

Sentence adjudged 2 February 2013 by GCM convened at Maxwell Air Force Base, Alabama. Military Judge: Michael J. Coco.

Approved Sentence: Dismissal, confinement for 2 months, and a reprimand.

Appellate Counsel for the Appellant: Major Matthew T. King and Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor; Major Rhea A. Lagano; and Gerald R. Bruce, Esquire.

Before

HARNEY, SANTORO, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial consisting of officer members convicted the appellant, contrary to his pleas, of two specifications of conspiracy to commit indecent acts, one specification of conduct unbecoming an officer by engaging in sexual intercourse in the presence of another, and a second specification of conduct unbecoming an officer by engaging in sexual intercourse and sodomy in the presence of another, in violation of

Articles 81 and 133, UCMJ, 10 U.S.C. §§ 881, 933.[1] The adjudged and approved sentence consisted of a dismissal, two months of confinement, and a reprimand. Before us, the appellant asserts: (1) The court-martial lacked personal jurisdiction over him; (2) The acts upon which his conviction was based were private and consensual and therefore not punishable under *Lawrence v. Texas*, 539 U.S. 558 (2003);[2] and (3) His sentence is inappropriately severe.

*Background*

The appellant became friends with several Airmen while he was a captain stationed at Langley Air Force Base, Virginia, between approximately 2001 and 2005. Among them were Lieutenant Colonel (Lt Col) SC, Lt Col DA, WM (then an active duty captain), and Master Sergeant (MSgt) RC. During that time, WM dated both Lt Col SC and the appellant and had separate consensual sexual intercourse with each.

In May 2007, Lt Col DA was married in Florida. The appellant, Lt Col SC, WM, and MS (a former Air Force captain and friend of Lt Col DA) attended the wedding and stayed in the same hotel. Lt Col SC and the appellant shared a room. WM, MS, and MSgt RC had separate rooms on another floor of the hotel.

When WM first arrived at the hotel, she went to MSgt RC's room to talk with him. At some point later, the appellant called MSgt RC's room and learned that WM was with MSgt RC. The appellant and Lt Col SC went to MSgt RC's room with a bottle of vodka. The appellant, Lt Col SC, and WM were all drinking.

WM became tired and said she was going to return to her room. MSgt RC asked the appellant and Lt Col SC to leave so he could go to sleep. Instead of returning to their room, the appellant and Lt Col SC went to WM's room. Over her protests, they carried WM back to their room and encouraged her to have sexual intercourse with them. She declined. When the men pressed her to explain why, she told them she was menstruating.

Undeterred by her objection, the appellant went to WM's room and searched through her suitcase and clothing. When he returned to his room, he announced to Lt Col SC (in the presence of WM) that she had no feminine hygiene products other than panty liners, so she was "good to go." The appellant and Lt Col SC disrobed WM and each had vaginal and oral intercourse with her in the presence of the other. The appellant and Lt Col SC acted in concert to position WM's body as each desired. When they were done, each man asked the other if he "was good," meaning whether he had achieved orgasm.

---

[1] The court-martial acquitted the appellant of conspiracy to commit rape, rape, assault consummated by a battery, and a third specification of conduct unbecoming an officer, in violation of Articles 80, 120, and 133, 10 U.S.C. §§ 880, 920, 933.

[2] The first and second issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

WM testified that although she did not want to have intercourse with them, after the appellant returned from his search of her belongings, she just gave in and let them have sex with her. She considered the activity consensual.

The next day, after the wedding, the guests went to a bar to continue the celebration. During the night, the appellant and Lt Col SC danced with MS. WM saw MS leaving with the appellant and Lt Col SC and said, "don't let them run a train on you," loud enough for everyone in the area to hear. The appellant and Lt Col SC transported MS back to their hotel. MS testified that she allowed them to take her back to the hotel because she knew they were Air Force officers and felt comfortable around them for that reason.

When they arrived at the hotel, they went to the appellant and Lt Col SC's room. One of the men unhooked MS's bra; she thought it was a joke and re-hooked it. When one of the men unhooked her bra again, she realized it was not a joke and got up to leave. As she walked toward the door, one of the men blocked her path and pushed her back into the room; the other man pulled her back toward the bed. The men undressed her and each had vaginal sex with her twice in the presence of the other. At trial, MS testified that she did not consent to having intercourse with either man.

*Personal Jurisdiction*

The appellant argues, as he did at trial, that the court-martial did not have personal jurisdiction over him because, by the time of his trial, he had been validly discharged. When personal jurisdiction is challenged on appeal, "we review that question of law de novo, accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported by the record." *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000) (citing *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999)).

The military judge made findings of fact which are amply supported by the record, are not clearly erroneous, and are not challenged before us, which we now adopt. Instead, the appellant challenges the military judge's legal conclusions based on the procedural history.

Following service in the Alabama Air National Guard, the appellant was on active duty between September 2001 and August 2007. He then served in the ready reserve until March 2011 when he transferred to the inactive reserve. On 14 March 2012, the appellant was notified by the Air Reserve Personnel Center (ARPC) that he was going to be discharged from the inactive reserve on 1 October 2012 because he had twice been passed over for promotion to major. The ARPC notice cited 10 U.S.C. §14505 (hereinafter "non-promotion discharge") as the discharge authority and advised the appellant that he would receive his discharge certificate "when the action is taken."

Charges were preferred on 8 May 2012. The Secretary of the Air Force approved any recall of the appellant to active duty on 18 July 2012. The special court-martial convening authority's staff judge advocate's office contacted ARPC in an effort to place the appellant on administrative hold to prevent his discharge. Despite assurances from ARPC that the appellant's status had been properly coded, an administrative oversight resulted in the code not being entered into the appellant's record.

As a result of this oversight, the section at ARPC responsible for affecting the appellant's non-promotion discharge continued processing and generated an order on 25 September 2012 which purportedly discharged the appellant on 1 October 2012. The order was never delivered to the appellant – not because the administrative error had been caught, but rather because ARPC had run out of paper for the DD Form 256 (the discharge certificate) that was to have accompanied the discharge order.

On 7 or 8 November 2012, the special court-martial convening authority's staff judge advocate learned of the existence of the non-promotion discharge order and contacted ARPC's staff judge advocate. On 8 November 2012, ARPC created an Air Force IMT Form 973 which purported to rescind the non-promotion discharge order.

The appellant was ordered to active duty to attend his Article 32, UCMJ, 10 U.S.C. § 832, hearing, for arraignment, and for trial. He was arraigned on 19 October 2012; there is no evidence or indication that the appellant contested those orders at the time of his arraignment.

The conduct underlying the offenses for which the appellant was tried occurred while he was on active duty; however, by the time charges were preferred, he was a member of a reserve component. A member of a reserve component becomes subject to a court-martial's jurisdiction when ordered onto active duty to answer for offenses committed while the member was on active duty. Articles 2(d)(1) and 2(d)(2)(A), UCMJ, 10 U.S.C. §§ 802 (d)(1), (d)(2)(A).

Before us, the appellant does not challenge whether the Article 2, UCMJ, procedural requirements were followed. Rather, he argues that he was discharged as of 1 October 2012 and therefore was no longer a member of any military component or subject to the UCMJ.

A valid discharge ordinarily requires *delivery* of a valid discharge certificate, a final accounting of pay, and out-processing.[3] *United States v. Hart*, 66 M.J. 273, 280 (C.A.A.F. 2008); *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989). The passage of

---

[3] At trial, the parties agreed that no final accounting of pay or out-processing was necessary due to the appellant's reserve status.

an established separation date alone does not act as a discharge. *United States v. Fitzpatrick*, 14 M.J. 394, 397 (C.M.A. 1983).

The appellant argues that ARPC's 25 September 2012 order was self-executing, or to put it differently, that ARPC issued a prospective discharge certificate. To satisfy the first prong of discharge case law (that the discharge certificate must be delivered to be effective), he argues that ARPC's 14 March 2012 notice that a discharge would occur in the future was in effect the "delivery" of the discharge certificate that would not be generated for another six months.

We conclude, as did the military judge, there was never delivery of a valid discharge certificate. The appellant never actually received a valid discharge certificate, and the mere fact that ARPC prepared an order that purported to discharge the appellant does not change the fact that no certificate was ever delivered. Therefore, the appellant remained subject to court-martial jurisdiction.

*Constitutional Challenge*

The appellant next argues that his convictions must be set aside in light of the Supreme Court's holding in *Lawrence v. Texas*, as applied to the military in *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004). He asserts the conduct that resulted in his conviction was private, consensual conduct that was protected by *Lawrence* and *Marcum*. At trial, the military judge denied the appellant's motion to dismiss these specifications because he found that the alleged conduct did not fall within a protected liberty interest.

We review Constitutional questions de novo. *Marcum*, 60 M.J. at 202. As the appellant attacks the statute "as applied," we conduct a de novo fact-specific analysis. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013) (citing *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012)). We apply a three-pronged analysis:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Marcum*, 60 M.J. at 206-07 (internal citation omitted).

At the outset, we note that "[t]here is no question that Appellant's rights as a member of the military are not coextensive with those enjoyed by civilians" and that "no

one asserts that the interest recognized in *Lawrence* is somehow exempt from adaptation to the military environment." *Goings*, 72 M.J. at 205, 206.

Our superior court has held that even post-*Marcum*, "The commission of sexual acts in the presence of a third party has been held to be sufficiently 'open and notorious' to constitute an indecent act, punishable under Article 134, UCMJ." *Id.* at 206; *see also United States v. Izquierdo*, 51 M.J. 421, 422-23 (C.A.A.F. 1999). In *Goings*, a third party was present during consensual sexual activity and recorded the activity. Our superior court upheld Goings' conviction for engaging in an indecent act, concluding that the presence of the third party, even though voluntarily present and with the knowledge and consent of the parties engaged in the sexual activity, was sufficiently open and notorious to take it outside of the liberty interest identified in *Lawrence*.[4] *Going*, 72 M.J. at 206.

As it relates to the facts of this case, our superior court pointed out in *Goings*:

> When the conduct being charged does not fall directly within the focal point of *Lawrence*—sexual conduct *between two individuals* in a wholly private setting that was criminal for no other reason than the act of the sexual conduct itself—and where, as here, the predicate sexual conduct is criminal because of some additional factor (in this case, the violation of clauses 1 and 2 of Article 134, UCMJ), the burden of demonstrating that such conduct should nonetheless be constitutionally protected rests with the defense at trial.

*Id.* at 207 (emphasis added). The appellant "must develop facts at trial that show why his interest should overcome the determination of Congress and the President that the conduct be proscribed." *Id.*

In each of the specifications alleging conduct unbecoming an officer, the military judge instructed the members that to find the appellant guilty, they must be convinced beyond a reasonable doubt that (1) He engaged in wrongful act (sexual intercourse with MS or sexual intercourse and oral sodomy with WM); (2) The act was indecent; and (3) Under the circumstances, his conduct was unbecoming an officer and a gentleman. The military judge further instructed the members:

> Article 133, UCMJ, is not intended to regulate the wholly private consensual sexual activities of individuals. In the absence of aggravating circumstances, private consensual sexual activity including sexual intercourse and/or oral sodomy is not punishable as an indecent act.

---

[4] The third party in *United States v. Goings*, 72 M.J. 202, 204 (C.A.A.F. 2013), also participated in the sexual activity, but his participation was not alleged in the indecent act specification at issue.

Among possible aggravating circumstances is that the sexual activity was open and notorious. Sexual activity may be open and notorious when the participants know that someone else is present. This presence of someone else may include a person who is present and witnesses the sexual activity.

The military judge gave a similar instruction with respect to the specifications alleging conspiracy to commit indecent acts.

The Supreme Court's analysis in *Lawrence* addresses private, consensual sexual activity between two adults. The *Lawrence* court neither considered nor addressed whether the liberty interest it identified extended to activities involving more than two people, whether simultaneously or consecutively. Cognizant of *Lawrence*, our superior court's holding in *Goings* cited with approval existing military law defining an indecent act as one that was "open and notorious" when the participants know that another was present to witness the sexual activity. 72 M.J. at 206. On these facts, we conclude that the appellant's acts were not "private." They are therefore outside the privacy interest identified by the Supreme Court in *Lawrence*. As such, the appellant's Constitutional challenge must fail.

*Sentence Severity*

Lastly, the appellant argues that his sentence to a dismissal was inappropriately severe. In support of his argument, the appellant asserts that the Government charged him with the offenses of which he was ultimately convicted simply as "tack on" offenses to the more serious crimes of rape and assault. He further argues that had the Government believed that the activity was consensual, as he asserts the members concluded, he would not have faced trial. Finally, he argues that the offenses of conduct unbecoming an officer and conspiracy to commit indecent acts constitute "minor offenses" warranting little to no punishment. Alternatively, the appellant invites our attention to the sentence of his coactor, Lt Col SC, which was "no punishment."

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Healy*, 26 M.J. 394, 395-96 (C.M.A. 1988). Moreover, while we are

required to examine sentence disparities in closely related cases, we are not required to do so in other cases. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Christian*, 63 M.J. 714, 717 (A.F. Ct. Crim. App. 2006).

We are unpersuaded by the appellant's assertion that his offenses are minor and should not be punished. The very existence of the Article 133, UCMJ, offense signifies the higher standard to which officers must be held. The court-martial concluded beyond a reasonable doubt that the appellant's conduct dishonored or disgraced him as an officer, seriously compromised his character, or compromised his standing as an officer. We fully agree.

Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. "At [this Court], an appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the disparity." *Id.*

In support of his argument, the appellant submitted an Air Force Form 1359 ("Report of Result of Trial") from Lt Col SC's case. The Report of Result of Trial indicates that Lt Col SC was convicted, contrary to his pleas, of two specifications of conduct unbecoming an officer for "engaging in contemporaneous sexual conduct" with the appellant and WM and MS. Lt Col SC was acquitted of raping and assaulting MS.

As Lt Col SC was the appellant's coactor with respect to each offense, we conclude that the cases are "closely related." We next turn to whether the sentences were highly disparate. Again, we conclude that they were: the appellant was sentenced both to a punitive discharge and confinement, whereas his coactor received no punishment. Accordingly, the Government bears the burden of showing that there is a rational basis for the disparity.[5]

Unlike the appellant, Lt Col SC was not charged with conspiracy to commit any offenses. Moreover, the nature of the conduct unbecoming allegations, while similar, is distinguishable. The appellant was charged with conduct unbecoming an officer for "wrongfully committing an indecent act" with each of the women by engaging in sexual acts in the presence of another. In contrast, Lt Col SC was charged with conduct unbecoming an officer for "engaging in contemporaneous sexual conduct" with each woman and with the appellant. There was no allegation of indecency in Lt Col SC's

---

[5] In its brief before us, the Government twice argues that because the appellant failed to submit evidence concerning Lieutenant Colonel SC's sentencing case, we must "solely look at Appellant" to determine whether there is a rational basis for his sentence. Our review of this case, however, applies the proper legal standard to determine whether the Government has met *its* burden to establish a rational basis for the sentence disparity.

conduct beyond that inherent in the definition of unbecoming conduct. The appellant was charged with, and found guilty of, more egregious offenses than his coactor.

There is no evidence that either charging decision was unreasonable or impermissible. "Just as 'disparity in sentencing among codefendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the [federal sentencing] guidelines,' the military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (alteration in original). "[C]harging decisions by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing." *Id.* at 261.

We have no evidence before us of matters considered by Lt Col SC's court-martial. However, we conclude that the evidence presented during the appellant's case supports the appellant's sentence. The appellant's officer performance reports – particularly those in the years immediately preceding his trial – were mediocre at best, including a referral performance report for violating testing procedures while an instructor at Air University. The appellant had twice been passed over for promotion and was facing involuntary separation. In contrast, Lt Col SC was a major at the time of the offenses and had since been promoted to lieutenant colonel.

Taking all of these matters into account, we conclude there is a rational basis for the disparity in sentences between the appellant and Lt Col SC. Lt Col SC's unusually good fortune in receiving a sentence of "no punishment" after being convicted of two specifications of conduct unbecoming an officer should not result in an undeserved windfall for the appellant. *See Lacy*, 50 M.J. at 288 (noting that judges on the Courts of Criminal Appeals "'have a solid feel for the range of punishments typically meted out'" (quoting *United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985))).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court